```
        [10-6243 (15); 11-914 (2, 5); 11-946 (2, 6); 11-954 (2, 6);
                                                      11-956 (2, 6)]
```

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| RESOLUTION MANAGEMENT CONSULTANTS, INC., and JEFFREY B. KOZEK, | : |
| | : Civil Action No. |
|     PlaintiffS, | : 10-6243 (RMB/AMD) |
|        v. | : |
| TERRENCE J. HICKEY and T. PATRICK BROYHILL, | : |
|     Defendants. | : |

| | |
|---|---|
| RESOLUTION MANAGEMENT CONSULTANTS, INC., | : Civil Action No. |
| | : 11-914 (RMB/JS) |
|     Plaintiff, | : |
|        v. | : |
| T. PATRICK BROYHILL, | : |
|     Defendant. | : |

| | |
|---|---|
| JEFFREY B. KOZEK, | : Civil Action No. |
| | : 11-946 (RMB/JS) |
|     Plaintiff, | : |
|        v. | : |
| T. PATRICK BROYHILL, | : |
|     Defendant. | : |

1

```
                                   :
                                   :
JEFFREY B. KOZEK                   :   Civil Action No.
                                   :   11-954 (RMB/JS)
     Plaintiff,                    :
                                   :
          v.                       :
                                   :
TERRENCE J. HICKEY,                :
                                   :
     Defendant.                    :
                                   :
                                   :
                                   :
RESOLUTION MANAGEMENT              :   Civil Action No.
CONSULTANTS, INC.,                 :   11-956 (RMB/JS)
                                   :
     Plaintiff,                    :
                                   :
          v.                       :
                                   :   MEMORANDUM ORDER
TERRENCE J. HICKEY,                :
                                   :
     Defendant.                    :
                                   :
                                   :
```

Currently pending before the Court are nine motions in five separate but closely related civil actions. In the interest of judicial economy and efficiency, the Court considers these motions together and issues this Order in each of the five cases.

The first motion was brought in Civil Action Number 10-6243 (the "Original Action") by the defendants, Terrence J. Hickey and T. Patrick Broyhill, to vacate the plaintiffs' voluntary dismissal of the complaint under Federal Rule of Civil Procedure 41(a)(1)(A)(i). After filing the notice of dismissal, the plaintiffs in the Original

Action - Resolution Management Consultants, Inc. ("RMC") and its owner, Jeffrey B. Kozek (collectively the "Plaintiffs") – each filed separate complaints against Hickey and Broyhill in state court. The defendants removed the complaints to federal court, alleging diversity jurisdiction under 28 U.S.C. § 1332(a). This resulted in four separate but related actions before this Court. [Civil Action Nos. 11-914, 11-946, 11-954, 11-956 (the "Related Actions").] Hickey and Broyhill (the "Defendants") then filed motions to dismiss for lack of jurisdiction in each of their respective cases. RMC and Kozek opposed the motions to dismiss and filed motions to remand, alleging that the defendant failed to show to a legal certainty the requisite amount in controversy. The Court will first address the motions to remand as it affects this Court's jurisdiction over the above-captioned matters. For the following reasons, the Court denies Defendants' motion to vacate the notice of dismissal in the Original Action and grants the motions to remand in the Related Actions. The Court therefore does not reach Defendants' motions to dismiss, which will be denied as moot.

### BACKGROUND

On September 27, 2010, Plaintiffs initiated the Original Action with the filing of a complaint in the Superior Court of New Jersey, Burlington County. The complaint alleged malicious prosecution and civil conspiracy, arising from an employment dispute which led to litigation in South Carolina state court. Hickey and Broyhill, former

3

RMC employees, had sued Plaintiffs for the same torts of malicious prosecution and civil conspiracy now alleged against them.[1] Defendants removed the complaint in the Original Action to this Court, alleging diversity jurisdiction. [Civil No. 10-6243, Dkt. Ent. 1.] Defendants subsequently moved to dismiss the complaint for lack of personal jurisdiction, improper venue, or, alternatively, to transfer venue. [Dkt. Ent. 2.]

Plaintiffs opposed Defendants' motion to dismiss and filed a motion to remand on the grounds that Defendants had failed to demonstrate the requisite amount in controversy. [Dkt. Ent. 4.] Before these motions were fully briefed, Plaintiffs filed a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), which permits a plaintiff to dismiss an action without a court order where the opposing party has not yet filed an answer or a motion for summary judgment. The Clerk of Court accordingly closed this case. Defendants subsequently filed the instant motion to vacate dismissal and restore the case to the docket.

_____

[1] Although Broyhill and Hickey's separate claims were brought together in one lawsuit, the South Carolina Court of Common Pleas bifurcated the claims for trial. Hickey's claims went to trial first in January 2010. At the close of Hickey's case, the court directed a verdict, dismissing with prejudice all claims by Hickey against Kozek (and two other RMC principals) along with Hickey's conspiracy claim against RMC. At the conclusion of his trial, a jury awarded Hickey a verdict against RMC for malicious prosecution in the amount of $5,691.38 in compensatory damages, the exact amount of unreimbursed attorney's fees that Hickey had claimed. Broyhill's claims were tried separately before a second jury. At the conclusion of Broyhill's case, as it had done in Hickey's case, the court directed a verdict, dismissing with prejudice all claims by Broyhill against the RMC principals along with Broyhill's conspiracy claim against RMC. In stark contrast to Hickey's verdict, the jury awarded Broyhill a verdict against RMC in the amount of $291,000, consisting of $140,000 in compensatory damages and $151,000 in punitive damages. Hickey and Broyhill appealed the dismissal of their malicious prosecution claims against the individual defendants and the civil conspiracy claim against RMC. RMC appealed the verdicts against it. The appeals are still pending. (Pl.'s Br. 3-4.)

4

[Dkt. Ent. 15.]

Subsequently, RMC and Kozek each filed two separate lawsuits in the Superior Court of New Jersey, Burlington County, against Hickey and Broyhill, respectively. Each complaint again alleged malicious prosecution and civil conspiracy. This time, however, each complaint limited the amount in controversy to "a total amount not to exceed $75,000." Nevertheless, the defendant in each case again removed the complaint to this Court, asserting diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), and then moved to dismiss for lack of jurisdiction. The plaintiff in each case again moved to remand, arguing that the court lacked federal subject matter jurisdiction, because the defendant had failed to prove to a legal certainty that the amount in controversy exceeds $75,000. These motions are now ripe for adjudication.

## DISCUSSION

### A. Motion to Vacate Plaintiffs' Notice of Voluntary Dismissal

Plaintiffs voluntarily dismissed the complaint in the Original Action pursuant to Rule 41(a)(1)(A)(i), which permits a plaintiff to dismiss an action without a court order by filing "a notice of dismissal before the opposing party serves either an <u>answer</u> or a <u>motion for summary judgment</u>." <u>Id.</u> (emphasis added).

Defendants concede that they neither filed an answer nor a motion for summary judgment prior to Plaintiffs' voluntary dismissal. They argue instead that their motion to dismiss should be treated as the

equivalent of a motion for summary judgment in light of the record that has been compiled in the briefing of the remand and dismissal/transfer motions. They also argue that letting Plaintiffs voluntarily dismiss the complaint would allow them to improperly manipulate this Court in order to defeat federal subject matter jurisdiction. (Defs.' Moving Br. 7.)

Plaintiffs respond that Defendants' argument runs contrary to the express language of Rule 41 and the binding case law that interprets it. (Opp. Br. 1.) They argue, correctly, that the filing of a notice of voluntary dismissal automatically dismisses the complaint, and a motion to dismiss under Rule 12 does not make such a notice untimely. They contend that this rule is "especially true" here, where the plaintiffs filed the notice of dismissal before the Court even ruled on the defendants' motion to dismiss and thus the Court never considered the merits of the complaint and did not hear any testimony.  Id. (citing In re Bath & Kitchen Fixtures Antitrust Litig., 535 F.3d 161, 165-66 (3d Cir. 2008)).

In In re Bath & Kitchen Fixtures, the Third Circuit Court of Appeals set forth three key aspects of Rule 41(a)(1)(A)(i), which control this analysis:

> First, a filing under the Rule is a notice, not a motion. Its effect is automatic: the defendant does not file a response, and no order of the district court is needed to end the action. Second, the notice results in a dismissal without prejudice (unless it states otherwise), as long as the plaintiff has never dismissed an action based on or including the same claim in a prior case.  Third, the defendant has only two options for cutting off the plaintiff's right to end the case by notice: serving on the

plaintiff an answer or a motion for summary judgment. 535 F.3d at 165 (reversing order vacating notice of voluntary dismissal and remanding to trial court with instructions to dismiss action without prejudice). Accordingly, Rule 41(a)(1)(A)(i) creates a bright-line test that limits the plaintiff's right of dismissal to the early stages of litigation; this "simplifies the court's task by telling it whether a suit has reached the point of no return. If the defendant has served either an answer or a summary judgment motion it has; if the defendant has served neither, it has not." Id. at 165 (citing Manze v. State Farm Ins. Co., 817 F.2d 1062, 1065 (3d Cir. 1987) (quoting Winterland Concessions Co. v. Smith, 706 F.2d 793, 795 (7th Cir. 1983)). The Third Circuit stressed:

> Up to the "point of no return," dismissal is automatic and immediate - the right of a plaintiff is "unfettered." A timely notice of voluntary dismissal invites no response from the district court and permits no interference by it. A proper notice deprives the district court of jurisdiction to decide the merits of the case.

In re Bath & Kitchen Fixtures, 535 F.3d at 165-66 (internal citations omitted).

Here, Defendants filed a motion to dismiss under Rules 12(b)(2) and (3) and, in the alternative, a motion to transfer venue under 28 U.S.C. § 1404(a). This is not an answer or a motion for summary judgment, and the Court never converted it into such. Thus, Defendants' motion to dismiss did not terminate Plaintiffs' right to dismiss by notice. Id. at 166 ("Only when a motion filed under Fed. R. Civ. P. 12(b)(6) is converted by the district court into a motion

for summary judgment does it bar voluntary dismissal."). Under the unambiguous language of Rule 41(a)(1)(A)(i) and the binding case law interpreting it, such a motion to dismiss does not interfere in any way with a plaintiff's right to voluntarily dismiss a claim. Id.; Manze, 817 F.2d at 1066 (rejecting defendant's argument that motion to dismiss was "equivalent" to motion for summary judgment and thus should have barred plaintiff's dismissal by notice).  Accordingly, Plaintiffs' notice of dismissal was proper and automatically dismissed this case.

Defendants nevertheless urge the Court to vacate Plaintiffs' notice of dismissal, relying solely on an outdated case from another circuit that was based upon a unique procedural history not present in this case. (Defs.' Moving Br. 2, 6-7 (citing Harvey Aluminum, Inc. v. Am. Cyanamid Co., 203 F.2d 105 (2d Cir. 1953), cert. den'd, 345 U.S. 964 (1953) (preliminary injunction motion treated as answer or motion for summary judgment for purposes of dismissal rule).) In Harvey Aluminum, the Second Circuit reversed the trial court's order denying the defendant's motion to vacate the plaintiff's notice of voluntary dismissal. In that case, the plaintiff had filed its notice under Rule 41, following a lengthy preliminary injunction hearing on the merits of the plaintiff's claims. Id. at 107-08. The Second Circuit concluded that the preliminary injunction proceedings had progressed to such an advanced stage that a notice of dismissal at that point was improper. Id. The Second Circuit stressed that the

8

preliminary injunction hearing had required several days of argument and testimony, yielding a record of some 420 pages, and the district court had already squarely addressed the merits of the case. Id.

The decision in Harvey Aluminum is easily distinguishable from the case at bar. Here, Defendants' motion sought to dismiss the complaint for lack of personal jurisdiction and improper venue before reaching the merits of the claims. The Court had not heard oral argument or testimony on any matter related to this case and had not yet considered Defendants' motion, which was not yet ripe for adjudication. Thus, the proceedings in this case never approached the advanced stage of the Harvey Aluminum case, and the matter required minimal investment of this Court's time and resources. Accordingly, Harvey Aluminum is inapplicable to the facts and procedural history of this case.

Moreover, the Third Circuit has expressly noted that Harvey Aluminum has been "criticized for blurring the Rule's 'bright-line' timing test, and it has been distinguished when appropriate." In re Bath & Kitchen Fixtures, 535 F.3d at 167, n.10. The Third Circuit acknowledged the potential unfairness of this bright-line rule, noting that it "may permit a strategic advantage for a plaintiff: if prospects for prevailing on the merits appear dim, the plaintiff can obtain a dismissal without prejudice after imposing high costs on defendants and judges." Id. at 166. The Court concluded, however, that "Rule 41 provided for only two responses – answer and motion for

summary judgment - as points of no return. It would be improper to graft a new category onto the literal text of the Rule." <u>Id.</u> (internal quotations and citations omitted). Accordingly, this Court has no basis to vacate Plaintiffs' timely notice of dismissal. Defendants' motion to vacate this dismissal is therefore denied.

**B. Motions to Remand**

Jurisdiction based on diversity exists if the amount in controversy exceeds $75,000 and the suit is between citizens of different states.   28 U.S.C. § 1332(a)(1). Since Defendants seek to bring the Related Actions before this Court, they bear the burden of proving that subject matter jurisdiction pursuant to § 1332 is proper. <u>Frederico v. Home Depot</u>, 507 F.3d 188, 193 (3d Cir. 2007); <u>Samuel-Bassett v. Kia Motors America, Inc.</u>, 357 F.3d 392, 398 (3d Cir. 2004). Factual questions or disputes involving the amount in controversy are to be resolved by the Court under the preponderance of the evidence standard. <u>Frederico</u>, 507 F.3d at 194 (under the Supreme Court's <u>McNutt</u> standard, the party alleging jurisdiction must "justify his allegation by a preponderance of evidence.") (citing <u>McNutt v. General Motors Acceptance Corp. Of Indiana</u>, 298 U.S. 178 (1936)); <u>see also Samuel Bassett</u>, 357 F.3d at 398.   In other words, a defendant seeking removal must prove to a reasonable probability that jurisdiction exists.

Where the relevant facts as to the amount in controversy are not in dispute or findings have been made, the Court must then apply the

legal certainty test established in St. Paul Mercury Indemnity Company v. Red Cab Company, 303 U.S. 283 (1938). Frederico, 507 F.3d at 194. Under the Red Cab test, "a case must be dismissed or remanded if it appears to a legal certainty that the plaintiff cannot recover more than the jurisdictional amount of $75,000." Id. at 195 (emphasis added) (internal citation and quotations omitted). Where the plaintiff has strategically limited its claim to avoid federal jurisdiction, as RMC and Kozek have done here, the burden shifts to the removing party to show to a legal certainty that the amount in controversy exceeds the statutory threshold. Frederico, 507 F.3d at 196 (explaining Morgan v. Gay, 471 F.3d 469 (3d Cir. 2006)).

Clearly then, before this Court can engage in the above jurisdictional analysis, it must have all the necessary facts to do so. Initially, the Court's determination of the amount in controversy in a removal case "begins with a reading of the complaint filed in the state court." Samuel-Bassett v. Kia Motors America, Inc., 357 F.3d 392, 398 (3d Cir. 2004). However, a plaintiff's pleadings are not dispositive under the legal certainty test; even where a plaintiff has limited her claims below the jurisdictional amount, the Court must still inquire into whether the "actual monetary demands in the aggregate exceed the threshold." Morgan, 471 F.3d at 474-75. As part of this inquiry, the Court also examines the defendant's notice of removal. Id. at 474; Frederico, 507 F.3d at 197 ("[T]o determine whether the minimum jurisdictional amount has been met in a diversity

case removed to a district court, a defendant's notice of removal serves the same function as the complaint would if filed in the district court." (internal citations omitted)).

Here, the complaint in each of the Related Actions contains an ad damnum clause, limiting damages to "a total amount not to exceed $75,000." In their notices of removal, the defendants do not dispute that a plaintiff may limit her claims to an amount below the jurisdictional minimum, and that when this occurs, the removing defendant must show to a legal certainty that the amount in controversy exceeds the statutory threshold. Instead, Defendants argue that the amount in controversy exceeds $75,000 because the Plaintiffs improperly splintered the Original Action into four separate actions merely to avoid federal subject matter jurisdiction. They contend that this was an act of bad faith, and thus this Court should disregard such splintering when determining diversity jurisdiction. (Opp. Br. 10-11.)

Defendants further argue that each plaintiff has improperly splintered its claims against Hickey and Broyhill who are jointly and severally liable,[2] and thus the damages alleged against each must be aggregated to determine the true amount in controversy. (Opp. Br. 7, 12 (citing Jewel v. Grain Dealers Mutual Ins. Co., 290 F.2d 11 (5th

---

[2] Black's Law Dictionary defines "joint and several liability" as the following:
Liability that may be apportioned either among two or more parties or to only one or a few select members of the group, at the adversary's discretion. Thus, each liable party is individually responsible for the entire obligation, but a paying party may have a right of contribution and indemnity from nonpaying parties.
Black's Law Dictionary 933 (9th ed. 2009).

Cir. 1961); Golden v. Golden, 382 F.3d 348, 355 (3d Cir. 2004); Freeman
v. Blue Ridge Paper Products, Inc., 551 F.3d 405 (6th Cir. 2008)).
Defendants reason that because each of the complaints seeks damages
"not to exceed $75,000" from both Hickey and Broyhill separately, when
aggregated, each plaintiff asserts claims against both defendants for
an amount "not to exceed" $150,000. They contend that this aggregate
amount exceeds the jurisdictional threshold of $75,000.[3] (Opp. Br.
11, 14.)

The Court finds these arguments unpersuasive. As an initial
matter, Defendants ignore the well-settled principle that a plaintiff
is master of her complaint and may avoid federal subject matter
jurisdiction if she is willing to limit her damages. Morgan v. Gay,
471 F.3d 469, 474 (3d Cir. 2006) (citing St. Paul Mercury Indem. Co.
v. Red Car Co., 303 U.S. 283, 294 (1938) ("If [the plaintiff] does
not desire to try his case in the federal court he may resort to the
expedient of suing for less than the jurisdictional amount, and though
he would be justly entitled to more, the defendant cannot remove.").
Moreover, the plaintiff "is in the best position to know how much his
claim is worth, and we deem a plaintiff's request for damages to have
been made in good faith." Shaw v. Dow Brands, Inc., 994 F.2d 364, 366
(7th Cir. 1993); Faracchao v. Harrah's Entm't, Inc., Civ. Action No.
06-1364, 2006 WL 2096076, *1 (D.N.J. Jul. 27, 2006) (citing Shaw).

---

[3] Defendants erroneously argue that Plaintiffs "have each plead damages not to
exceed $75,000 from Hickey and Broyhill on each of the two causes of action[.]"
(Opp. Br. 11 (emphasis added).) Each complaint states, however, that the plaintiff
seeks a "total amount not to exceed $75,000", clearly for both the malicious
prosecution and civil conspiracy claims. (See Compl., Ntc. Rmvl. Ex. 3.) The Court

Although Defendants have accused Plaintiffs of bad faith by pleading damages below the jurisdictional amount despite knowing the claim is worth more, Defendants have provided no evidence to support this allegation. Thus, it appears RMC and Kozek have properly limited their respective damages in order to avoid federal jurisdiction.

Furthermore, Defendants have pointed to no case law, which would require the Court to consolidate these actions and aggregate Plaintiffs' claims in order to reach the requisite amount in controversy.[4] Even if Hickey and Broyhill were jointly and severally liable, as Defendants contend, this fact does not require Kozek or RMC to sue them together in a single cause of action.[5] See, e.g., S.E.C. v. J.W. Barclay & Co., 442 F.3d 834, 843 (3d Cir. 2006) (quoting United States v. Gregg, 226 F.3d 253, 260 (3d Cir. 2000) ("A liability is joint and several when 'the creditor may sue one or more of the parties to such liability separately, or all of them together, at his [or her] option.'"). Indeed, even if the Related Actions were

---

thus rejects this portion of Defendants' aggregation argument.

[4] In their notices of remand, Defendants argue that Plaintiffs improperly splintered the Original Action contrary to "New Jersey rules of civil procedure and the 'entire controversy doctrine.'" (Ntc. Rmvl. ¶ 12(a)). As Plaintiffs correctly note, Defendants cite to outdated case law and ignore the 1998 amendment to New Jersey Court Rule 4:30A, which eliminated mandatory party joinder under the entire controversy doctrine. See Pl's Moving Br. 10; see generally Schneider v. United States, Civ. No. 06-3200, 2008 WL 408420, *3 (D.N.J. Feb. 18, 2008). Notably, Defendants abandoned this argument in their opposition papers, and thus the Court deems the point conceded.

[5] Notably, Defendants have not shown that they should be held jointly and severally liable for all of Plaintiffs' damages. Defendants have only argued that the "torts of malicious prosecution and civil conspiracy impose joint and several liability" and that the plaintiffs have sued Hickey and Broyhill for conspiring with one another. Defendants have ignored the fact that Hickey and Broyhill's claims against Plaintiffs were bifurcated by the South Carolina trial court, and thus Hickey and Broyhill's liability for malicious prosecution in the Related Actions arise from their separate trials. Since the Court grants Plaintiffs' motions to remand on other grounds, it need not inquire further into this issue.

consolidated, Defendants have failed to show that each plaintiff would be required to aggregate its claims against Hickey and Broyhill for purposes of establishing diversity jurisdiction. (Opp. Br. 7 (citing Golden v. Golden, 382 F.3d 348, 355 n.5 (3d Cir. 2004), superseded on other grounds by Marshall v. Marshall, 547 U.S. 293 (2006) (noting that several circuit courts have held that where a plaintiff has sued multiple defendants on the theory that they share liability, the plaintiff is "permitted to 'aggregate' his or her claims against the multiple defendants to meet the statutory requirement") (emphasis added); Jewel v. Grain Dealers Mutual Insurance Co., 290 F.2d 11 (5th Cir. 1961) ("Claims against two or more defendants can be aggregated for the purpose of attaining the jurisdictional amount . . . if they are jointly liable to the plaintiff.") (emphasis added)). Notably, the Third Circuit has never decided whether such aggregation is permissible. Golden, 382 F.3d at 355 n.5.

Furthermore, Defendants' reliance on Freeman v. Blue Ridge Paper Products, Inc., 551 F.3d 405 (6th Cir. 2008), to support its aggregation argument is misplaced. In Freeman, the Sixth Circuit held that where the plaintiffs had divided up identical class action suits for no colorable reason other than to avoid federal subject matter jurisdiction under CAFA and to expand recovery in state court, the claims should be combined for purposes of determining the amount in controversy. Id. at 409. The Freeman court expressly limited its

15

holding to CAFA cases. Id. ("Our holding is limited to the situation where there is no colorable basis for dividing up the sought-for retrospective relief into separate time periods, other than to frustrate CAFA."). The court reasoned:

> If such pure structuring permits class plaintiffs to avoid CAFA, then Congress's obvious purpose in passing the statute – to allow defendants to defend large interstate class actions in federal court – can be avoided almost at will, as long as state law permits suits to be broken up on some basis."

Id. at 407. Thus, Freeman clearly does not apply to the non-CAFA case at bar.

Moreover, Defendants rely on flawed logic in assuming that aggregation of Hickey's and Broyhill's claims equals a sum "not to exceed" $150,000, which amounts to more than the $75,000 jurisdictional threshold of § 1332. If a plaintiff sues one defendant for less than $75,000 and another defendant for less than $75,000, the aggregate amount in controversy is not necessarily greater than $75,000. The claims in each case could easily amount to only $37,000, which, when combined, equal only $74,000 and thus fall below the jurisdictional minimum.

Indeed, a review of the complaints and notices of removal in the Related Actions causes this Court to seriously doubt whether the amount in controversy would exceed the jurisdictional minimum even if this Court aggregated each of the plaintiff's claims against Hickey and Broyhill. As observed, the complaints expressly limit damages to "a total amount not to exceed $75,000." The Court deems the

16

plaintiff's request for damages to have been made in good faith. <u>See</u>
<u>supra</u>. As is proper under the New Jersey Court Rules, the complaints
in the Related Actions do not plead a specific amount of monetary
damages. N.J. Ct. R. 4:5-2 (2011) ("If unliquidated money damages are
claimed in any court, other than the Special Civil Part, the pleading
shall demand damages generally without specifying the amount.").
However, Defendants could have obtained this information through a
procedural mechanism designed for this very purpose. New Jersey Court
Rule 4:5-2 provides:

> Upon service of a written request by another party, the
> party filing the pleading shall within 5 days after service
> thereof furnish the requesting party with a written
> statement of the amount of damages claimed . . . .

It appears Defendants never requested a statement of damages from
Plaintiffs, since they did not submit any such documentation to the
Court.

Instead, Defendants rely on an affidavit from Stanley E.
Barnett, Esquire, the attorney who represented Hickey and Broyhill
in the South Carolina litigation against Plaintiffs. (Barnet Aff.,
Ntc. Rmvl. Ex. 4.) Barnett notes that attorney's fees and expenses
are damages recoverable for malicious prosecution. He then uses his
own billing records from the South Carolina litigation to estimate
the attorney's fees and costs that RMC and Kozek may recover in the
instant suits for defending themselves against the malicious
prosecution and civil conspiracy claims previously asserted by Hickey
and Broyhill. Barnett concludes that Kozek's total claim against

17

Hickey and Broyhill for attorney's fees and costs is approximately $18,025 ($16,800 in attorney's fees plus $1,225 (half of $2,450) for costs, such as travel associated with trial). (Barnett Aff. ¶¶ 12-13.) Barnett estimates that RMC's claim for the same is approximately $2,905 ($1,680 in legal fees plus $1,225 for costs associated with trial). (Id.) Barnett also acknowledges the unpredictability of a verdict for compensatory and punitive damages, citing to the disparity in the damage awards to Hickey and Broyhill at trial. (Barnett Aff. ¶¶ 14-16.) Hickey won a jury award on his malicious prosecution claim for only $5,691.38, the exact amount of unreimbursed attorney's fees that he had claimed, whereas Broyhill, who arguably had a weaker case than Hickey, won a verdict for $140,000 in compensatory damages and $151,000 in punitive damages. (Pl.'s Moving Br. 3-4.) The inexplicable disparity between these verdicts underscores the futility of trying to predict a jury verdict in a case such as this. Kozek, like Hickey, may very easily obtain a jury award limited to recovery of attorney's fees and costs, approximately $18,025. RMC may obtain a similar jury award for only $2,905. On the other hand, Kozek and RMC may instead win large awards for compensatory and punitive damages, like Broyhill. Thus, the amount in controversy may fall well below or above the jurisdictional threshold. Such doubt must be resolved in favor of remand.

The Third Circuit has cautioned that § 1441 must be strictly construed against removal "so that the Congressional intent to

18

restrict federal diversity jurisdiction is honored." Samuel-Bassett v. KIA Motors America, Inc., 357 F.3d 392, 396 (3d Cir. 2004) (internal citations omitted); Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985) ("Because lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand.") (internal citations omitted). Thus, a removing party must provide more than mere speculation or tenuous inferences about the amount in controversy to satisfy its burden. Russ v. Unum Life Ins. Co., 442 F. Supp. 2d 193, 198 (D.N.J. 2006) ("[M]ere speculation that a claim will exceed the jurisdictional amount is not enough to confer jurisdiction."); Valerio v. Mustabasic, Civ. No. 07-534, 2007 WL 2769636, *4 (D.N.J. Sept. 21, 2007). In other words, "if this Court has to guess" at whether the jurisdictional threshold has been met, then the "defendant has not proved its point." Valerio, 2007 WL 2769636 at *4 (internal citations omitted).

Defendants carry a particularly heavy burden in this case, where each complaint expressly limits the amount in controversy below the jurisdictional amount. As discussed above, this Court has serious doubts as to whether the amount in controversy exceeds the statutory minimum, even if each plaintiff aggregated its claims against the defendants. Such doubt warrants a remand. Indeed, the speculation and tenuous inferences on which Defendants rely fall far short of

establishing to a legal certainty that the amount in controversy exceeds $75,000. This Court therefore lacks jurisdiction over the Related Actions and grants Plaintiffs' motions to remand.

ACCORDINGLY, IT IS on this **29th** day of **June 2011**, hereby:

**ORDERED** that Defendants' motion to vacate Plaintiffs' voluntary dismissal in the Original Action [Civ. No. 10-6243, Dkt. Ent. 15] is **DENIED**; and it is further

**ORDERED** that the plaintiff's motion to remand in each of the Related Actions shall be **GRANTED** [Dkt. Ent. 5 in Civ. No. 11-914; Dkt. Ent. 6 in Civ. Nos. 11-946, 11-954, 11-956]**;** and it is further

**ORDERED** that each of the Related Actions shall be **REMANDED** to the Superior Court of New Jersey, Burlington County; and it is further

**ORDERED** that the defendant's motion to dismiss for lack of jurisdiction in each of the Related Actions is **DISMISSED AS MOOT** [Dkt. Ent. 2 in Civ. Nos. 11-914, 11-946, 11-954, 11-956]; and it is finally

**ORDERED** that the Clerk of the Court shall **CLOSE** the file in each of the Related Actions [Civ. Nos. 11-914, 11-946, 11-954, 11-956].

s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE